## Oakdale Baking Co. *v.* Philadelphia & Reading Railway Co., Appellant.

## Mayers-Mallory Co. *v.* Philadelphia & Reading Railway Co., Appellant.

*Negligence—Railroads — Proof of negligence—Sparks — Fire— Proximate cause—Evidence—Allegata and probata—Averment as to time—Case for jury.*

1. In an action against a railroad company to recover damages for the destruction of property by fire, alleged to have been caused by the negligent emission of sparks from defendant's engines, it is not error to admit evidence to show that within two or three weeks before and after the fire as the engines of defendant company passed by the premises of the plaintiff, sparks nearly an inch in diameter and burning coals as large as a man's fist were frequently discharged from defendant's engines and fell into plaintiff's yard, in some instances starting fires thereon.

2. In such case it was error to admit evidence as to other fires in the neighborhood, where the witnesses were not able to testify that such fires had been caused by sparks or cinders from defendant's engines.

3. In such case it was not error to permit plaintiff to show the direction and velocity of the wind at the time of the fire, as bearing upon the probability that everything in the air above defendant's tracks would be carried upon plaintiff's premises.

4. Where in such case the fire started along the retaining wall in plaintiff's yard and from this was communicated to sheds, stables, and the main building, in such a way that the burning was a continuous succession of events, so linked together that it became one natural whole, and constituted in fact one continuous conflagration, the spark which started the first fire was the proximate cause of the damage.

5. In an action against a railroad company to recover damages for the destruction of plaintiff's property by fire alleged to have

been caused by the negligent emission of sparks from defendant's engines, the case is for the jury where it appeared that on the day of the fire between the hours of 2:30 and 3:15 p. m., nine locomotives and two shifting engines passed over defendant's tracks in close proximity to plaintiff's yard; that the nine locomotives were identified and the two shifting engines partially so; that within the hours mentioned a fire started along the retaining wall in plaintiff's yard, whence it was communicated directly to certain sheds, stables and the main building; that at the time of the fire the wind was blowing in the direction of the plaintiff's yard from defendant's tracks; but there was no testimony that between the hours mentioned, or any other time that day, any engine operated by defendant was seen to emit sparks, cinders or burning coals at any point in the vicinity of plaintiff's premises, nor was there proof that any one of the nine identified engines was not properly equipped with an approved spark arrester, in good condition, or was operated in a negligent manner, and nothing was shown in connection with the operation of any of such engines on the day of the fire from which an inference of negligence could have been drawn; but the testimony showed that on other days, for a period of two or three weeks both before and after the fire, sparks as large as a hen's egg, and burning coals as large as a man's fist were seen to pass from defendant's engines upon the plaintiff's premises, in some instances causing fires.

6. Where in such case plaintiff's statement alleged that the negligent throwing of sparks causing the fire occurred between the hours of 2:30 and 3:15 p. m., it was reversible error for the court to instruct the jury that they were at liberty to find that the spark which caused the fire might have fallen on the premises at any time prior to 2 o'clock.

Argued Jan. 5, 1914. Appeals, Nos. 71 and 72, Jan. T., 1913, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1909, No. 3454, on verdict for plaintiff in case of Oakdale Baking Company v. Philadelphia & Reading Railway Company, and from judgment of C. P. No. 4, Philadelphia Co., March T., 1910, No. 2463, on verdict for plaintiff in case of Mayers-Mallory Company v. Philadelphia & Reading Railway Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for property destroyed by fire. Before DAVIS, J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff in case of Oakdale Baking Company v. Philadelphia & Reading Railway Company for $16,090.67, and for plaintiff in case of Mayers-Mallory Company v. Philadelphia & Reading Railway Company, for $6,090.50. Defendant subsequently moved for a new trial and for judgment n. o. v. in each case, which motions were overruled by the court and judgments entered on the verdicts. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points, and rulings on evidence as set forth in the opinion of the Supreme Court.

*Wm. Clarke Mason,* for appellant.

*Maxwell H. Kratz,* with him *Horace Michener Schell, Frank R. Shattuck,* and *Henry H. Edmunds,* for appellees.

OPINION BY MR. JUSTICE BROWN, March 23, 1914:

These two actions, which were tried together, were brought to recover damages for the destruction by fire of real and personal property belonging to the plaintiffs below. The fire is alleged to have been caused by the negligent emission of sparks and burning coals from an engine belonging to or operated by the defendant company. The averment upon which recoveries are sought is that on September 5, 1909, between 2:30 and 3:15 p. m., in the City of Philadelphia, sparks, cinders and living coals were negligently permitted to escape from an engine of the defendant, setting fire to and burning the buildings and other property set forth in plaintiffs' statements. The issue on the question of the time when the

fire was thus started was limited by the plaintiffs themselves to the forty-five minutes stated. This conclusively appears in the stipulation in the Oakdale Baking Company case.

In support of their averment of negligence the plaintiffs proved that, between the hours named, nine locomotives and two shifting engines passed over the tracks of the defendant in close proximity to plaintiffs' yard. The nine locomotives were clearly identified by a telegraph operator in the employ of the defendant company, called as a witness by the plaintiffs. He gave the number of each locomotive. The shifting engines were only partially identified by the plaintiffs, as is admitted by counsel for appellant. There was no testimony that, between 2:30 and 3:15 p. m. on the day of the fire, or at any other time that day, any engine, operated by the defendant, was seen to emit sparks, cinders or burning coals at any point in the vicinity of plaintiffs' premises; and there was no proof, nor offer to prove, that any one of the nine identified engines was without an approved spark arrester or had a spark arrester in bad condition, or was in any respect operated in a negligent manner. Nothing was shown in connection with the operation of any of the said eleven engines on the day of the fire from which an inference of negligence could have been drawn; but the plaintiffs were permitted to show that, on other days, both before and after the fire, sparks and burning coals were seen to pass from engines of the defendant, in some instances starting fires on the premises of the plaintiffs. Complaint is made of the admission of this testimony, but that it was properly received, under the circumstances, is not to be questioned. Two of the engines which passed the premises during the time stated were not fully identified by any witness called by the plaintiffs. The fire may have resulted from sparks or cinders negligently emitted or thrown from them. Under the testimony submitted by the plaintiff, no cause for it existed on the premises.

In support of their averment that the fire had been caused by sparks emitted from an engine negligently operated by the defendant, the plaintiffs were not confined to affirmative proof of the negligent operation of the engine, but were permitted to show such operation by circumstantial evidence. It was, therefore, competent for them to show, in support of their allegation that the fire was caused by defendant's negligence, that at or about the time of the fire, before and after—within reasonable latitude—its engines had been negligently operated: Henderson v. Philadelphia & Reading Railroad Company, 144 Pa. 461; American Ice Company v. Pennsylvania Railroad Company, 224 Pa. 439. In the case at bar the learned trial judge confined the plaintiffs within a reasonable latitude—two or three weeks before and after the fire—in submitting testimony to show defendant's negligent operation of its engines, and that testimony justified an inference of such operation. It was shown that, during that period—in some instances within two or three days of the fire—as the engines of the defendant company passed by the premises of the plaintiffs, on an elevated track, sparks an inch in diameter and nearly as large as a hen's egg, and burning coals as large as a man's fist fell from the engines of the defendant down into the yard of plaintiffs. This emission of sparks of large size was of frequent occurrence, and in some instances they started fires on plaintiffs' grounds. From the testimony submitted by them the conclusion could hardly have been avoided that, shortly before and after the fire, the engines of the defendant were being negligently operated as they passed the premises of plaintiffs, and, under Henderson v. Railroad Company, supra, the question of the defendant's negligence as the cause of the fire was for the jury. In that case plaintiffs' watchman testified on their behalf that one of his duties was to watch passing trains, to see whether they threw any sparks in the vicinity of the mill; that he came to the mill on the day in question about a quar-

ter of an hour before it shut down for the night, the shutting down being at 5:15 p. m., railroad time; that after his arrival he went out to watch a coal train going north, the engine of which he was unable to identify; that he saw nothing unusual in the working of the engine and saw no sparks thrown; that about a quarter of an hour afterwards he went out to watch another train, drawn by engine No. 72, and saw no sparks thrown by that engine or anything unusual in its operation. The fire was discovered soon after the passage of engine No. 72. Plaintiffs' counsel made the following offer: "Plaintiffs offer to prove that the property of persons along the line of defendant's road, which passed the property of the plaintiffs' destroyed by the fire in question on August 10, 1888, and within twelve miles of plaintiffs' said property, was repeatedly set on fire by unknown and unidentified engines of the defendant, and that the sparks, causing the said fires, emitted by the said engines, exceeded a hickory-nut in size: to be accompanied by evidence of experts showing that engines throwing sparks of the size of hickory-nuts either did not use the most approved spark-arresters in general use, or, if they did, the spark-arresters used were permitted to become defective and out of repair, or were negligently managed by those in charge of them." On appeal from a judgment in favor of the plaintiffs it was held that the foregoing offer was improperly admitted, but solely on the ground that it was wholly without limit as to time. In reversing the judgment and awarding a new trial, we said: "This offer, it will be seen, was wholly without limit as to time. The testimony received under it was, in some instances, confined to two or three months, in some to six months, and in some the testimony was general, and in such form as not to indicate to what period of time it referred.......The examination should be confined to the negligent operation of the engines of the company at or about the time of the fire, with such reasonable latitude, before and after the occurrence, as

is sufficient to enable such proofs to be practicable." The 13th, 14th, 15th, 16th, 17th and 20th assignments are overruled.

The 18th, 19th, 21st and 22d assignments complain of the admission of testimony as to fires which the witnesses evidently thought had been caused by sparks or cinders from defendant's engines, but, as they were unable to say that the fires had been so caused, the inclination of the trial judge to exclude their testimony ought to have prevailed. The said assignments are, therefore, sustained.

The 24th assignment alleges error in permitting the plaintiffs to show the direction and velocity of the wind at the time of the fire. We find nothing in the printed brief of counsel for appellant in support of this assignment, and have, therefore, concluded that it was abandoned. It was entirely proper for the plaintiffs to show by competent testimony that, at the time the fire was discovered, the wind was blowing at great velocity from the northwest, likely to carry everything in the air above the tracks of the defendant company over onto plaintiffs' premises.

In the first six assignments, complaining of portions of the charge, there is nothing calling for reversal, except that portion which is the subject of the third assignment. As already stated, the issue as to the time of the fire and of the defendant's alleged negligent operation of its engines was expressly limited by the plaintiffs themselves to the three-quarters of an hour between 2: 30 and 3: 15 p. m., but, under the instruction complained of in the third assignment, the jury were given to understand that they were at liberty to find that the spark which caused the fire may have fallen upon the premises "at any time prior to 2 o'clock." Under the issue as made up and tried by the plaintiffs, the jury were not at liberty to so find, and the third assignment is sustained.

Finally it is urged that, under Pennsylvania Railroad Company v. Kerr, 62 Pa. 353, there can be no recovery,

as the spark which may have started the fire along the retaining wall in plaintiff's yard was not the proximate cause of the general conflagration. What we said of the above case, in Montgomery v. Southern Mutual Insurance Company, 242 Pa. 86, was that it "applied the correct rule to the facts in the case." In the present case the burning was a continuous succession of events, so linked together that they became one natural whole. There were, as counsel for appellee well contend, no separate and distinct burnings, but one continuous conflagration from the time the fire started at the base of the retaining wall and spread thence to the sheds, the stable and the main building. The Kerr case is without application.

Upon the case as presented by the plaintiffs the question of the defendant's liability was for the jury, and, but for the errors which are the subjects of the sustained assignments, the judgment would be affirmed. To its alleged liability the defendant presented a complete defense, and, if the jury believed the testimony of its witnesses as to the condition of every engine that passed by the premises of the plaintiffs between 2 : 30 and 3 : 15 p. m., September 5, 1909, the charge of negligence was utterly disproved. Whether that oral testimony ought to have been accepted as truth was not, however, for the court.

Judgments reversed and a venire facias de novo awarded in each case.